UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE D. M., | : |
| Petitioner, | : Civ. No. 20-4031 (KM) |
| v. | : |
| WILLIAM BARR, *et al.*, | : **OPINION** |
| Respondents. | : |

**KEVIN MCNULTY, U.S.D.J.**

## I. INTRODUCTION

Petitioner, Jose D. M.,[1] is an immigration detainee currently held at the Elizabeth Contract Detention Facility ("ECDF"), in Elizabeth, New Jersey. He is proceeding by way of counsel with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (DE 1.) For the reasons set forth below, the Petition will be denied.

## II. BACKGROUND

### A. COVID-19

On March 11, 2020, the World Health Organization classified the virus known as COVID-19 as a global pandemic. *See* Ctrs. for Disease Control and Prevention, *Situation Summary*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html (last visited Apr. 24, 2020). COVID-19 is a rapidly spreading respiratory disease which poses a serious health risk. *See id.* The virus can spread "[b]etween people who are in close contact with one another (within about 6 feet)" and from contact with contaminated surfaces. *See* Ctrs. for Disease Control and

---

[1] Consistent with guidance regarding privacy concerns in social security and immigration cases by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Petitioner is identified herein only by his first name and last initial.

Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited Apr. 24, 2020). Certain groups of individuals, such as those who are over sixty-five (65) years of age, have serious underlying medical conditions, or are immunocompromised, are at "higher risk for severe illness from COVID-19." *See* Ctrs. for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 24, 2020). In order to prevent the spread of the virus, the CDC recommends "social distancing" (staying at least six feet away from others), wearing cloth face coverings when out in public, regular disinfection of "frequently touched surfaces," and washing hands often with soap and water, among other practices. *See* Ctrs. for Disease Control and Prevention, *Prevent Getting Sick*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/disinfecting-your-home.html (last visited Apr. 24, 2020). Ultimately, however, "[t]he best way to prevent illness is to avoid being exposed to this virus." *See id.*

According to the CDC, correctional and detention facilities present "unique challenges for control of COVID-19 transmission," due to the fact that individuals "live, work, eat, study, and recreate within congregate environments[.]" *See* Ctrs. for Disease Control and Prevention, *Guidance for Correctional & Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Apr. 24, 2020). This close proximity heightens the potential that COVID-19 will spread. *See id.* Moreover, the "ability of incarcerated/detained persons to exercise disease prevention measures (e.g., frequent handwashing) may be limited and is determined by the supplies provided in the facility and by security considerations." *See id.*

### B. Factual and Procedural Background of Petitioner's Case

Petitioner is a 34-year-old native and citizen of Honduras. (DE 1-4 at 2.) Respondents state that Petitioner has previously been removed from the United States, once on December 3, 2005 pursuant to a final order of removal and once on May 17, 2006 pursuant to an Order of Expedited Removal. (DE 4 at 7-8.) Petitioner most recently entered the United States on or about October 15, 2018 with a juvenile child. (DE 1-4 at 2; DE 4 at 8.) When detained, Petitioner expressed a fear of returning to Honduras due to political reasons and he was given a credible fear interview by an asylum officer. (DE 1-4 at 2.) Ultimately, Petitioner's prior removal order was reinstated, but he was released on an Order of Supervision due to his status as caretaker of the juvenile child. (DE 4 at 8.) At the time he was released, Petitioner was also issued a Notice to Appear placing him in removal proceedings. (*Id.*)

On February 20, 2020, Petitioner's custody was redetermined since he was no longer the sole caretaker of the juvenile child and his Order of Supervision was revoked. (*Id.*) Petitioner was scheduled to have a hearing on March 30, 2020 before an Immigration Judge, but the hearing was cancelled until further notice due to closure of the court. (DE 1-4 at 2.) Petitioner's immigration case remains pending. (*Id.*) Petitioner states that he requested humanitarian parole due to the "deplorable conditions" at ECDF, but his request was denied. (*Id.* at 2, 6.)

On April 12, 2020, Petitioner filed, through counsel, a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (DE 1.) The Petition seeks immediate release from custody based upon fear of contracting COVID-19. (*Id.* at 6.) Respondents oppose the Petition. (DE 4.)

### C. ECDF's COVID-19 Protocols

To describe the measures ECDF has undertaken to combat the spread of COVID-19 in its facility, Respondents set forth the declaration of Captain Abelardo Montalvo, M.D., who oversees

health care delivery at ECDF. (DE 4 at 29-33.) Captain Montalvo states that the facility is following the guidance issued by the CDC to safeguard those within its custody and care. (*Id.* at 30.) Detainees who present symptoms of COVID-19 are placed in isolation and tested. (*Id.*) If the detainee tests positive, they remain in isolation and are given treatment. (*Id.*) If their condition deteriorates, however, they are referred to a local hospital. (*Id.*) If a detainee has had exposure to an individual with confirmed COVID-19, but is asymptomatic, that detainee is placed in a "cohort" with restricted movement for 14 days and is monitored daily for symptoms. (*Id.*)[2] If there are no new cases within those 14 days, the practice of cohorting is discontinued. (*Id.*) ECDF also has special protocols in place for detainees who are at "high risk" for complications due to COVID-19. (*Id.*) The facility has recommended detainees with these high risk conditions be released per CDC guidelines. (*Id.*) Any medical detainee with a medical condition "outside the scope of the [facility's] clinic" will be sent to a local hospital. (*Id.*)

Captain Montalvo also states that ECDF has increased sanitation of its facility on a more frequent basis and provided soap in each of the dorms. (*Id.* at 31.) Staff are currently wearing face masks and the facility expects to receive masks for all detainees between April 9, 2020 and April 14, 2020. (*Id.*) ECDF has educated its staff and the detainees about COVID-19 and best practices to avoid contracting the illness. (*Id.* at 32.) Signs reiterating this information are posted within the housing units and within other areas of the facility. (*Id.*)

Furthermore, ECDF is attempting to maintain six feet of space between all detainees, at all times, regardless of whether they have symptoms. (*Id.*) During meals, detainees are kept six feet apart from each other and the chairs in the dining hall are arranged to accommodate such space.

---

[2]  Captain Montalvo defines cohorting as "an infection prevention strategy which involves housing detainees together who were exposed to a person with an infectious organism but are asymptomatic." (*Id.* at 2.)

(*Id.*) Detainees' bunk beds have also been spaced apart to allow six feet of distance in all directions. (*Id.*) Additionally, all group activities besides limited outdoor time and dining have been temporarily suspended. (*Id.*)

As of April 10, 2020, Respondents report that there are seven immigration detainees and multiple employees who have tested positive for COVID-19 at ECDF. (DE 4 at 31.)

### III. DISCUSSION

Petitioner sets forth two main grounds for relief: that his continued detention violates the Due Process Clause, as well as the Eighth Amendment prohibition against cruel and unusual punishment. (DE 1 at 6.)[3] Based upon these allegations, Petitioner seeks immediate release from custody to ensure his health and safety.

#### A. Denial of Humanitarian Parole

Petitioner's first ground for relief states that his continued detention violates his due process rights. (DE 1 at 5.) In his brief, Petitioner more specifically indicates that the basis for this claim is ICE's decision to deny him humanitarian parole. (DE 1-4 at 5.) Petitioner argues that "Respondents have denied the Petitioner's humanitarian parole request without consideration of the effect of the COVID-19 virus on his health and without exploring alternative means short of incarceration that would ensure that his health would not be compromised." (*Id.*) Respondents, however, argue that this Court lacks jurisdiction to review the Government's decision to grant or

---

[3] Petitioner also raises a third cause of action, which states simply that his detention is "not authorized by the Immigration and Nationality Act." (DE 1 at 6.) The specific basis for this argument is unclear. Petitioner does not argue that his detention is unduly prolonged, only that his detention is unlawful given his potential exposure to COVID-19. (DE 1-4 at 3.) In response, Respondents assert that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a) of the INA. (DE 4 at 17.) Indeed, when an individual who has previously been removed from the United States re-enters the United States without authorization, "the prior order of removal is reinstated from its original date[.]" 8 U.S.C. § 1231(a)(5). Petitioner, who was previously removed from the United States twice, re-entered without authorization in 2018. Thus, to the extent that Petitioner alleges his detention is not "authorized" by the INA, he is in fact properly detained pursuant to § 1231(a).

5

deny parole. (DE 4 at 20.) Respondents further state that even if this Court did have jurisdiction, Petitioner still does not have a due process right to the discretionary grant of parole. (*Id.*)

Generally, under 28 U.S.C. § 2241, a district court may exercise jurisdiction over a habeas petition when the petitioner is in custody and alleges that this custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c); *Maleng v. Cook*, 490 U.S. 488, 190 (1989). However, the Real ID Act of 2005 precludes a district court from reviewing decisions that are committed to the discretion of the Attorney General. *See* 8 U.S.C. § 1252. Section 1252 provides, in pertinent part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241], or any other habeas corpus provision, . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
> \* \* \* \*
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title [(relating to authority to apply for asylum)].

8 U.S.C. § 1252(a)(2)(B).[4]

The statutory section that authorizes parole for urgent humanitarian reasons explicitly grants authority for such parole to the Attorney General "in his discretion." *See* 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. § 212.5(a). This is precisely the type of discretionary decision that the Real ID Act precludes this Court from reviewing. *See Doe v. Rodriguez*, Civ. No. 17-1709, 2018 WL 620898, at \*8 (D.N.J. Jan. 29, 2018) ("The effect of this statute on habeas claims

---

[4] A petitioner is not without recourse, however. Relevant constitutional or legal challenges may be asserted in an appeal to a United States Court of Appeals from an order of removal. *See* 8 U.S.C. § 1252(a)(2)(D).

challenging discretionary parole denials is clear—the Government 'can and often does release . . . alien[s] on parole, but [the] decision to do so is not judicially reviewable.'" (quoting *Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007))); *Naul v. Gonzales*, Civ. No. 05-4627, 2007 WL 1217987, at *2-3 (D.N.J. Apr. 23, 2007) ("[T]he Attorney General's denial of Petitioner's parole requests, pursuant to 8 U.S.C. § 1182(d)(5)(A), is a discretionary decision outside this Court's review."); *Codina v. Chertoff*, Civ. No. 06-105, 2006 WL 2177673, at *2 (D.N.J. July 31, 2006) ("The Court cannot review this denial of discretionary relief in a habeas action, as the statute expressly grants the Attorney General discretion to grant or deny parole."); *see also Giammarco v. Kerlikowske*, 665 F. App'x 24, 26 (2d Cir. 2016) (holding that district courts lack jurisdiction to hear petitioner's challenge to the denial of humanitarian and public benefit parole). Here, Petitioner is directly challenging the decision to deny his request for parole, which this Court is not authorized to review. Accordingly, this Court lacks jurisdiction over Petitioner's first claim for relief.

### B. Cruel and Unusual Punishment

Petitioner's second ground for relief alleges that his detention during the COVID-19 pandemic violates his right against cruel and unusual punishment. (DE 1 at 6; DE 1-4 at 6.) Petitioner argues that his continued detainment "in such unhealthy conditions" is unduly punitive. (DE 1-4 at 7.)[5]  Respondents contend, however, that the conditions at ECDF do not amount to punishment, particularly in light of the facility's preventative measures and Petitioner's lack of an underlying medical condition which would place him at heightened risk of severe illness. (DE 4 at 20-23.)

---

[5]  Petitioner relies on the Eighth Amendment's "deliberate indifference" standard in making his argument, however, as will be discussed further below, an immigration detainee's conditions of confinement claim is more appropriately addressed under the heightened protections of the Fourteenth Amendment. *See E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019)

At the outset, I note that the Supreme Court has "left open the question whether [detainees] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862-63 (2017); *see also Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement."); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal."). Federal courts, however, have seemingly condoned challenges to conditions of confinement raised through a habeas petition. *See Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242-44 (3d Cir. 2005); *Ali v. Gibson*, 572 F.2d 971, 975 n.8 (3d Cir. 1978). Furthermore, as state previously, under 28 U.S.C. § 2241, a district court may exercise jurisdiction over a habeas petition when the petitioner is in custody and alleges that this custody violates the constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); *Maleng*, 490 U.S. at 490. Accordingly, I find that Petitioner may raise his conditions of confinement claim through the instant petition.

With respect to the merits of Petitioner's claim, unlike convicted prisoners whose conditions of confinement claims arise under the Eighth Amendment, immigration detainees are entitled to heightened protections. *See Sharkey*, 928 F.3d at 307. Accordingly, an immigration detainee's conditions of confinement claim is properly analyzed under the Due Process Clause of the Fifth (or Fourteenth) Amendment. *See Sharkey*, 928 F.3d at 307. Under that clause, "a detainee may not be punished prior to an adjudication of guilt." *See id.*

To determine whether an immigration detainee is subject to a condition of confinement that amounts to punishment, a court must look at whether the challenged condition is "reasonably

related to a legitimate government objective." *Sharkey*, 928 F.3d at 307. If it is not, then a court may infer "that the purpose of the governmental action is punishment that may not be constitutionally inflected upon detainees *qua* detainees." *Id.* (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)). A condition is "reasonably related to a legitimate government objective" if it serves a legitimate purpose and is rationally related to that legitimate purpose. *See Hubbard*, 538 F.3d at 232. A petitioner may demonstrate that a condition amounts to punishment if he shows that there is "an expressed intent to punish on the part of detention facility officials," if there is no "alternative purpose to which [the condition of confinement] may rationally be connected is assignable for it," *or* if the condition is "excessive in relation to the alternative purpose assigned [to it]." *See Bell*, 441 U.S. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

This inquiry has recently been addressed in this district within the context of the current COVID-19 pandemic. In cases where the court has found that the conditions of confinement amount to punishment, the court has emphasized the petitioner's serious underlying medical conditions. *See Cristian A.R. v. Decker,* Civ. No. 20-3600, ECF No. 26 at *3 (D.N.J. Apr. 12, 2020); *Rafael L.O. v. Tsoukaris*, Civ. No. 20-3481, 2020 WL 1808843, at *7-8 (D.N.J. Apr. 9, 2020); *Thakker v. Doll*, Civ. No. 20-480, 2020 WL 1671563, at *8 (M.D. Pa. Mar. 31, 2020).

In *Thakker*, the court found that although the government had a legitimate objective in preventing detainees from absconding, an outbreak of COVID-19 would present grave consequences to petitioners, whose medical conditions placed them at high risk of developing severe illness from the virus. *See Thakker*, 2020 WL 1671563, at *8. Similarly, in *Rafael L.O.*, the Court concluded that Respondents had a legitimate governmental objective in preventing detainees from absconding, but that the conditions of the prison, the current global pandemic, and the

9

medical vulnerabilities the petitioners suffered from, resulted in conditions of confinement that were tantamount to punishment. *See Rafael L.O.*, 2020 WL 1808843, at *7-8. And in *Cristian A.R.*, the court considered the fact that the petitioners were "medically vulnerable such that they may have an up to 20% chance of death if they contract COVID-19" in determining that "[t]he totality of the circumstances compel[s] a finding that the conditions of confinement at the Facilities are tantamount to punishment and therefore unconstitutional." *See Cristian A.R.*, Civ. No. 20-3600, ECF No. 26 at *21.

In the cases within this district which have not found that the conditions of confinement amount to punishment, the courts have cited the petitioners' lack of serious underlying health conditions as part of the Court's analysis. *See Emerson O. C.-S. v. Anderson*, Civ. No. 20-3774 (JMV), 2020 WL 1933992, at *6 (D.N.J. Apr. 22, 2020) (finding that petitioner's medical condition is critical to the analysis but his "age and the absence of any indicia of an underlying health condition do not support the notion that he may be particularly susceptible to the virus or any severe illness stemming from contracting it"); *Jorge V. S. v. Green*, Civ. No. 20-3675 (SDW), 2020 WL 1921936, at *4 (D.N.J. Apr. 21, 2020) ("As Petitioner has no such pre-existing condition . . . Petitioner has not shown a sufficiently serious deprivation in light of the significant steps the jail has taken to alleviate the risks posed by COVID-19."); *Buleishvili v. Hoover*, Civ. No. 20-607, 2020 WL 1911507, at *6 (M.D. Pa. Apr. 20, 2020) (considering fact that petitioner did not present any evidence to suggest his medical condition "makes him uniquely susceptible to either contracting the virus or experience severe complications from the disease" in determining whether he was subjected to punitive conditions of confinement). Furthermore, several cases have indicated that only a generalized fear of contracting COVID-19 is insufficient to support habeas relief. *See Brown v. United States Dep't, of Homeland Sec.*, Civ. No. 20-0119, 2020 WL 1911506, at *7 (M.D.

Pa. Apr. 20, 2020) ("It is not enough for a Petitioner to allege that he is detained and presented with a risk of contracting COVID-19 that is common to all prisoners."); *Singh v. Hoover*, Civ. No. 20-627, 2020 WL 1904470, at *3 (M.D. Pa. Apr. 17, 2020) (same); *Saillant v. Hoover*, Civ. No. 20-609, 2020 WL 1891854, at *5 (M.D. Pa. Apr. 16, 2020) ("[H]is claim amounts to an argument that he is entitled to a writ of habeas corpus because he is detained and subjected to a generalized risk of contracting COVID-19. Such a claim, however, is insufficient to establish entitlement to a writ of habeas corpus."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (denying petitioner's request for compassionate release under 18 U.S.C. § 3582 and stating that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

Here, Petitioner does not indicate that he suffers from any underlying health conditions. (*See generally* DE 1-4.) Rather, he expresses a general fear of contracting COVID-19. (*Id.* at 5-6.) Although this concern is understandable, it is not sufficient to warrant habeas relief, particularly in light of the measures taken by ECDF to prevent the spread of COVID-19. The facility has increased sanitation, provided soap in each of the dorms, will be providing masks for all detainees when those masks arrive, and importantly, is attempting to maintain social distancing between all detainees by rearranging the dining hall and bunk beds to allow for six feet of distance between individuals at all times. (DE 4 at 31-32.) In this respect, and on this record, conditions at ECDF do not appear to be comparable to those at other institutions where relief has recently been granted. Accordingly, given the measures taken by ECDF and Petitioner's apparent lack of medical conditions which would make him particularly vulnerable if exposed to COVID-19, Petitioner has not demonstrated that his conditions of confinement amount to punishment.

## IV.  CONCLUSION

For the foregoing reasons, the Petition will be denied without prejudice.[6] An appropriate Order accompanies this Opinion.

DATED: April 24, 2020

/s/ Kevin McNulty
KEVIN MCNULTY
United States District Judge

---

[6] The Petition also requested costs and attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (DE 1 at 6.) Since the Petition is denied, Petitioner is not entitled to fees and attorney costs pursuant to EAJA. *See* 28 U.S.C. § 2412(a)(1) (stating that costs "may be awarded to the prevailing party").

12